1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LIVIA UJHELYI,

   Plaintiff,

v.

TOM VILSACK, SECRETARY, U.S.
DEPARTMENT OF AGRICULTURE

   Defendant.

_____/

No. C 12-04282 JSW

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT
AND RESOLVING PENDING
MOTIONS**

**(Docket Nos. 107, 119, 135, 143, 147,
149.)**

   This matter comes before the Court upon consideration of the following motions: (1) the

motion for summary judgment filed by Defendant Tom Vilsack, Secretary, United States

Department of Agriculture ("Secretary Vilsack"); (2) the motion to compel discovery filed by

Plaintiff Livia Ujhelyi ("Ms. Ujhelyi"); (3) the motion to continue a ruling on the motion for

summary judgment, pursuant to Federal Rule of Civil Procedure 56(d) ("the Rule 56(d)

Motion"), filed by Ms. Ujhelyi; (4) the motion for leave to file a request for judicial notice filed

by Ms. Ujhelyi; (5) and the motion for leave to file a motion for sanctions filed by Ms. Ujhelyi.[1]

   The Court has considered the parties' papers, relevant legal authority, and the record in

this case, and it hereby GRANTS Secretary Vilsack's motion for summary judgment. The

Court sets forth its rulings on other pending motions in the remainder of this Order.

//

---

   [1]  Ms. Ujhelyi also filed motion for leave to file a reply to Secretary Vilsack's
response to her motions for leave to file a request for judicial notice and for leave to file a
motion for sanctions.  (Docket No. 149.)  For the reasons set forth in Sections C and D of this
Order, and because the Court concludes that it does not require a reply to Secretary Vilsack's
response, the Court DENIES the motion for leave to file a reply.

**United States District Court**
For the Northern District of California

## BACKGROUND

On July 14, 2002, the United States Department of Agriculture's Food Safety and Inspection Service ("USDA FSIS") hired Ms. Ujehlyi as a Veterinary Medical Officer.  (Docket No. 115, Declaration of Rebecca Falk ("Falk Decl."), Ex. A (Deposition of Livia Ujhelyi ("Ujhelyi Depo.") at 45:21-24, 145:10-146:9, 173:8-174:13, Depo. Ex. 11); Docket No. 46 (First Amended Complaint ("FAC") ¶¶ 45, 52, 120-121).)  Following orientation and approximately five months of training, USDA FSIS assigned Ms. Ujhelyi to cover three establishments in Eureka, California, including a company called Premiere Brand Meats ("Premiere").  (Ujhelyi Depo. at 58:25-59:2, 63:6-64:2.)

About two months after Ms. Ujhelyi began work in Eureka, Ms. Ujhelyi's supervisor, Dr. Fred Aquino, visited Premiere.  He reported to USDA FSIS that Premiere's owners, Roger and Laura Lawson, treated him with hostility and that he was concerned for his safety.  Mark Crowe, a USDA FSIS compliance inspector, also reported that the Lawsons treated him with a hostile and threatening manner.  (*See, e.g., id.* at 70:18-71:1, 71:10-13, 72:7-74:2, 76:15-87:1, 100:1-106:1; Docket No. 117, Declaration of Abdalla Amin ("Amin Decl."), ¶ 4, Ex. A at USA 740-41.)  Ms. Ujhelyi observed the Lawsons' hostility during those visits and testified that the Lawsons often expressed hostile feelings toward the USDA.  (*See, e.g.,* Ujhelyi Depo. at 68:12-69:15, 76:15-77:17, 112:14-115:21.)

On May 5, 2003, Ms. Ujhelyi sent an e-mail to Dr. Adel Malak, Deputy District Manager for the Alameda District Office, to ask if the Lawsons had permission to operate a tumbler off hours and before the machine had been inspected, and Dr. Malad responded the USDA had not given them permission to do so.[2]  (Ujhelyi Depo. at 106:10-109:16, and Depo. Ex. 1 at USA 236-37.)

On May 14, 2003, Ms. Ujhelyi observed that Premiere had started the tumbler before she arrived to inspect it.  According to Ms. Ujhelyi, when she raised the issue with Mrs. Lawson, Mrs. Lawson "started getting – throwing papers around, her hair kind of – you know – pulling her hair, and 'you have to talk to my husband.' And it was a rage situation."  (Ujhelyi

---

[2]     Tumblers are used to marinate and prepare meat.

1  Depo. at 110:17-24; *see also id.* at 111:9-3.)  Mr. Lawson arrived later and, after Ms. Ujhelyi

2  notified him of the problem, he also became upset and hostile.  Ms. Ujhelyi feared for her safety

3  and left the plant without completing her duties.  (*Id.* at 112:14-117:9.)

4       After she left Premiere, Ms. Ujhelyi called Dr. Malak and told him about the incident.

5  Dr. Malak told Ms. Ujhelyi to report the incident on "Form 4735, Reporting Form for Assault,

6  Threats of Assault, Intimidation" ("Form 4735").  Ms. Ujhelyi did not complete the form

7  immediately, because she was "in shock."  She also feared that documenting the incident could

8  make the plant owners especially hostile to her.  (*Id.* at 117:10-121:2.)  However, after she

9  consulted with her husband, Ms. Ujhelyi decided to complete the form and submitted it within

10 24 hours, as required by USDA policy.  (Ujhelyi Depo. at 121:3-123:23, 125:9-14, Depo. Ex. 2

11 at USA 239-241.)

12      Mrs. Lawson also apparently called Ms. Ujhelyi at some point after the incident,

13 although the parties dispute what happened during this call.  Ms. Ujhelyi claims Mrs. Lawson

14 asked what would happen to the plant, and she responded that Mrs. Lawson would have to

15 contact the District to find out.  (*Id.* at 126:19-127:11, 128:8-15.)  Ms. Ujhelyi also testified that

16 Dr. Malak asked her if she would be willing to accept an apology.  (*Id.* at 127:12-128:7.)

17 However, according to Dr. Murli Prasad, Ms. Ujhelyi's District Manager, Mrs. Lawson "called

18 Dr. Ujhelyi and apologized.  Dr. Ujhelyi accepted her apology, and by doing so, Dr. Ujhelyi

19 misrepresented the [USDA] and the District by accepting such an apology, although she was

20 instructed not to accept any verbal apology from the plant owner after harassment or

21 intimidation incidents."  (Amin Decl., ¶ 4, Ex. A at USA 790.)

22      As a result of this incident, USDA FSIS suspended Premiere for three days.  (*Id.*, Ex. A

23 at USA 740-743.)  On or about May 20, 2013, USDA FSIS lifted the suspension.  (*Id.*, Ex. A at

24 USA 758-760.)  Dr. Prasad directed Ms. Ujhelyi to resume her duties at Premiere, and she went

25 back to Premiere on May 20, 2014.  (Ujhelyi Depo. at 133:14-134:14.)  Although Ms. Ujhelyi

26 returned to Premiere that day, and for a few days thereafter, she testified that she continued to

27 feel threatened and intimidated by another Premiere employee.  (Ujhelyi Depo. at 134:15-

28 136:8.)

On or about May 19, 2013, Ms. Ujhelyi consulted a physician about the incident at Premiere on May 14, 2013. (Ujhelyi Depo. at 129:17-130:11, 130:19-24.) On May 23, 2013, Ms. Ujhelyi asked her doctor to write a note requesting three days of sick leave. She also testified that she notified Dr. Eric Garnighian, her acting supervisor, about her request, asked him to cover her, and took three days leave. (*Id.* at 136:9-137:25 and Depo. Exs. 4-5.) Ms. Ujhelyi claims that Dr. Malak denied the sick leave request and told her that she would be "on AWOL" status if she did not return to work. (*Id.* at 141:21-144:6.) During the administrative proceedings relating to this claim, Dr. Malak claimed he told Ms. Ujhelyi her sick leave would be approved once USDA FSIS received proper documentation. (Docket No. 110, Declaration of Valerie Sewell ("Sewell Decl."), ¶ 6, Ex. K (Malak Interrogatory Responses to Interrogatories 51 and 52).)

On or about June 6, 2003, Dr. Prasad recommended that USDA FSIS terminate Ms. Ujhelyi during her probationary period. Dr. Prasad stated that Ms. Ujhelyi: initially refused to complete Form 4735; accepted Mrs. Lawson's apology; failed to inform the Alameda District Office that Premiere was operational on Saturday, May 24, 2003, and as a result no inspector was present that day; and failed to follow instructions on how to document her request for sick leave. (Amin Decl., ¶ 8, Ex. B at USA 790-91.)

On June 12, 2003, USDA FSIS terminated Ms. Ujhelyi's employment. (*Id.*, ¶¶ 8-9, Exs. C-D.) In its "Notice of Termination of Probationary Appointment" USDA FSIS stated that it had "received documentation regarding [Ms. Ujhelhyi's] failure to follow Agency guidelines, failure to follow instructions, and [her] inability to make unilateral decisions," which USDA FSIS deemed "a serious breach of the standards of conduct[.]" (*Id.*, ¶ 9, Ex. D.)

On November 24, 2003, USDA FSIS, through the USDA's National Finance Center ("NFC") issued Ms. Ujhelyi a Bill for Collection for $1703.49, for moving expenses. According to USDA FSIS, Ms. Ujhelyi did not complete her Service Agreement, so it was entitled to collect this money from her. (Ujhelyi Depo. at 181:4-183:14 and Depo. Exs. 17-21; Docket No. 109, Declaration of Yvonne Martin ("Martin Decl."), ¶¶ 4-5, Ex. B.) Ms. Ujhelyi claims she requested reconsideration of this debt, but when NFC kept sending her bills, she paid

United States District Court
For the Northern District of California

1    the debt in order to avoid an adverse credit rating.  According to Ms. Ujhelyi, although she

2    continued to request that the debt be waived, neither NFC nor USDA FSIS has processed her

3    request or acted on it.  (*Id.* at 184:17-186:18 and Depo. Exs. 22-23.)  According to USDA FSIS,

4    it has no evidence that it received a request to reconsider the debt.  (Docket No. 112,

5    Declaration of Karen Betts ("Betts Decl."), ¶¶ 3-4; Docket No. 122, Declaration of Joyce Smith

6    ("Smith Decl."), ¶ 4.)

7       Ms. Ujhelyi's husband, Dr. Milsolav Muller ("Dr. Muller") also worked for the USDA.

8    (Falk Decl., Ex. B (Deposition of Miloslav Muller ("Muller Depo.") at 21:6-22.)  Well before

9    USDA FSIS hired Ms. Ujhelyi, Dr. Muller reported and complained about a hate crime incident

10    at one of his prior duty stations.  (Muller Depo. at 36:24-37:23.)  However, Dr. Muller testified

11    that when he accompanied Ms. Ujhelyi to her orientation in July 2002, he met with Dr. Prasad,

12    who he knew from a previous work assignment.  Dr. Muller testified that he mentioned to Dr.

13    Prasad that he felt the USDA might have retaliated against him because of his involvement in

14    reporting the hate crime incident.  (*Id.* at 93:23-94:21, 96:2-14.)  During the administrative

15    proceedings relating to this matter, Dr. Prasad denied that he knew about Dr. Muller's EEO

16    Activity.  (Sewell Decl., Ex. M (Prasad Interrogatory Response to Interrogatory No. 7.)

17       In addition to his involvement with the hate crime incident, in March 2003, Dr. Muller

18    filed an EEO complaint in which he alleged the USDA retaliated against him, and in May 2003,

19    he served as an EEO representative for, and filed an affidavit on behalf of, another co-worker

20    who filed an EEO complaint alleging race and disability discrimination.  (*Id.* at 11:5-15, 37:9-

21    23, 47:24-52:14, 64:25-20.)  The Court shall refer to Dr. Muller's reporting of the hate crime

22    incident, the filing of his own complaint, and his representation of his co-worker as "Dr.

23    Muller's EEO Activity."[3]

24       On August 14, 2012, Ms. Ujhelyi filed this lawsuit and asserted claims for alleged

25    retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. sections 2000e, *et. seq.*  In

26    her first claim for relief, she alleges that USDA FSIS terminated her because of Dr. Muller's

27

28       [3]    According to the record, Dr. Muller has engaged in other EEO Activity during his tenure with the USDA.  These three incidents are the only instances of his EEO Activity that are material to this dispute.

EEO Activity.  In her second claim for relief, she contends that USDA FSIS retaliated against her, because she filed an EEO complaint relating to her termination, by refusing to reconsider her debt.

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.      The Court Denies Ms. Ujhelyi's Motion To Compel Discovery.**

**1.      Applicable Legal Standards.**

Rule 37 of the Federal Rules of Civil Procedure enables the propounding party to bring a motion to compel responses to discovery.  Fed. R. Civ. P. 37(a)(3)(B).  The party opposing discovery bears the burden of resisting disclosure.  *Miller v. Pancucci*, 141 F.R.D. 292, 299 (C.D. Cal. 1992).  Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  Fed. R. Civ. P. 26(b)(1).  Information is relevant for purposes of discovery if "it is reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  Relevant information encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Because discovery is designed to define and clarify the issues in the case, it is not limited to the precise issues raised in the pleadings.  *Id.*, at 350-51.

"The question of relevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case."  *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller*, 141 F.R.D. at 296).  However, the Court may limit discovery if it determines the discovery sought is unreasonably cumulative or obtainable from a more convenient or less expensive source, the party seeking discovery had ample opportunity to obtain the information sought, or the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C).

**2.      First Set Of Requests For Production ("RFP") Dated February 26, 2014.**

Ms. Ujhelyi moves this Court to compel responses to her First Set of Requests for Production, dated February 26, 2014, on the basis that Secretary Vilsack provided insufficient

1  responses.  Secretary Vilsack, on the other hand, opposes Ms. Ujhelyi's Motion on the basis

2  that he already produced all responsive documents in his possession, custody, and control.

3                    **a.      RFP No. 4.**

4        Ms. Ujhelyi asks the Court to compel Secretary Vilsack to produce "all documents

5  reflecting, relating to, or supporting [her] formal discipline and documents concerning the

6  termination."  (First Set of RFP, RFP No. 4.)  Ms. Ujhelyi contends she needs these documents

7  to prove that she did not engage in any improper conduct.  Secretary Vilsack opposes Ms.

8  Ujhelyi's request on the basis that he already produced all responsive documents in his

9  possession, custody, and control.

10        Federal Rule of Civil Procedure 34 governs requests for production.  The rule permits a

11  party to "serve on any other party" a request to produce or allow inspection of documents or

12  tangible items that are "in the responding party's possession, custody, or control."  Fed. R. Civ.

13  P. 34(a)(1).  The party seeking production of the documents bears the burden of proving that the

14  opposing party has such control.  *United States v. International Union of Petroleum and Indus.*

15  *Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (citing *Norman v. Young*, 422 F.2d

16  470, 472-73 (10th Cir. 1970)).  The responding party must then make a reasonable inquiry to

17  determine whether the responsive documents exist and, if they do not, the party should so state

18  with sufficient specificity to allow the Court to determine whether the party made a reasonable

19  inquiry and exercised due diligence.  *Rogers v. Giubino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012)

20  (omitting quotations and citations).  "A party, however, is not required to create a document

21  where none exists."  *Id.*  (citing *Goolsby v. Carrasco*, 2011 WL 2636099, at *7-8 (E.D. Cal.

22  July 5, 2011)).

23        Based on the record, the Court concludes that Secretary Vilsack made a diligent effort to

24  search for and produce responsive documents.  Rather than merely asserting that he conducted a

25  diligent search, Secretary Vilsack describes his search with specificity by listing the documents

26  he found and in some cases, where he found them.  The Court also concludes that Ms. Ujhelyi

27  has not met her burden of proving that Secretary Vilsack has possession, custody or control of

28  all of the documents she seeks.

**United States District Court**
For the Northern District of California

7

United States District Court

For the Northern District of California

1    Accordingly, the Court denies Ms. Ujhelyi's motion to compel additional documents

2    responsive to RFP No. 4.

3          **b.    RFP No. 6.**

4    Ms. Ujhelyi asks the Court to compel Secretary Vilsack to produce "a verified copy of

5    completed original FSIS Form 4735-5 Reporting Form for Assault, Threats of Assault,

6    Intimidation, submitted by Plaintiff to the USDA, FSIS Alameda District Office on May 15,

7    2003, that shows the USDA monitoring and tracking of that particular workplace violence

8    incident." (First Set of RFP, RFP No. 6.)  Ms. Ujhelyi contends that she needs this document to

9    show that the USDA failed to properly investigate the workplace violence she endured on May

10   14, 2003.  Secretary Vilsack objects to this request on the same grounds that he objected to RFP

11   No. 4, *i.e.*, that he produced all responsive documents in his possession, custody, and control.

12   The Court denies Ms. Ujhelyi's motion to compel documents responsive to RFP No. 6

13   for the reasons it denied her request to compel documents responsive to RFP No. 4.

14         **c.    RFP No. 7.**

15   Ms. Ujhelyi asks the Court to compel Secretary Vilsack to produce "all copies of the

16   U.S. Department of Agriculture, the U.S. Department of Labor, and the U.S. Office of

17   Personnel Management's regulations, directives, memoranda, guidance, and other applicable

18   rules and policies that Plaintiff allegedly violated and that led to the Agency's decision to

19   terminate Plaintiff's employment.  Please indicate specific action/or omission in conjunction

20   with specific official regulations, etc." (First Set of RFP, RFP No. 7.)  Ms. Ujhelyi contends

21   that she needs these documents to show that she did not violate any USDA policies.  Secretary

22   Vilsack objects to this request on the same grounds that he objected to RFP No. 4, *i.e.*, that he

23   has produced all responsive documents in his possession, custody, and control.  Secretary

24   Vilsack also argues that requesting him to identify specific actions and/or omissions that

25   violated USDA policies and regulations is not proper under Rule 34.

26   The Court denies Ms. Ujhelyi's motion to compel documents responsive to RFP No. 7,

27   for the same reasons it has denied her motion to compel documents responsive to RFP Nos. 4

28   and 6.  In addition, to the extent she moves to compel Secretary Vilsack to identify a "specific

United States District Court

For the Northern District of California

1   action/or omission in conjunction with specific official regulations," that request does not relate

2   to documents.

3       Ms. Ujhelyi did propound an interrogatory on Secretary Vilsack requesting this

4   information, and Secretary Vilsack responded by referring her to documents he had produced.

5   (Docket No. 144-3, Request for Judicial Notice, Ex. 3.)  To the extent Ms. Ujhelyi argues that

6   she needs the level of detail called for by the interrogatory, which pertains to the reasons USDA

7   FSIS stated it had decided to terminate her, the Court denies the request for the reasons set forth

8   in Section B.

9           **3.      Ms. Ujhelyi's Second Set Of RFP, Dated March 1, 2014.**

10      Ms. Ujhelyi also moves this Court to compel responses to her Second Set of RFP, dated

11  March 1, 2014.  Secretary Vilsack opposes Ms. Ujhelyi' s motion on the basis that he is

12  prohibited, either by law or for privacy reasons, from producing the documents she seeks.

13              **a.      RFP No. 1.**

14      Ms. Ujhelyi asks the Court to compel Secretary Vilsack to produce the "U.S. Office of

15  Personnel Management Standard Form 52 reflecting duty station assignment of the USDA,

16  FSIS Inspector Ron Canady ["Canady"] in Petaluma Circuit during the times of events

17  described in this complaint."  (Second Set of RFP, RFP No. 1.)  Ms. Ujhelyi contends that she

18  needs the document to show retaliatory motive by USDA FSIS in regards to an "unexplained

19  alteration of [her] duties" upon arrival at her permanent duty station in Eureka, California.

20  Secretary Vilsack argues that because Canady is not a party to this action, Ms. Ujhelyi's request

21  for his personnel records implicates his privacy interests.  Secretary Vilsack also argues that

22  Ms. Ujhelyi's request is overly broad, unduly burdensome, and seeks information that is not

23  reasonably calculated to lead to the discovery of admissible evidence.  The Court finds the latter

24  argument persuasive.

25      The Court already ruled that she failed to exhaust her administrative remedies for any

26  claim based on alteration of her duties.  (Docket No. 43, Order Granting, in Part, and Denying,

27  in Part, Motion to Dismiss at 10:12-17.)  Thus, these documents are not reasonably calculated to

28

1   lead to the discovery of admissible evidence, and the Court denies Ms. Ujhelyi's motion to

2   compel documents responsive to RFP No. 1.

3           **b.**      **RFP No. 2.**

4         Ms. Ujhelyi asks the Court to compel Defendant to produce "W-2 Forms of a Veterinary

5   Medical Officer(s) issued by the USDA, National Finance Center, and who was (were)

6   employed by the Agency, and who replaced Plaintiff in Eureka, California, Establishment 6066

7   Redwoods Meats after she was terminated, for the time period of 2003-2013."  (Second Set of

8   RFP, RFP No. 2.)  Ms. Ujhelyi contends that she needs these documents to calculate lost wages.

9   Ms. Ujhelyi does not require that information to oppose Secretary Vilsack's motion for

10  summary judgment, and in light of the Court's ruling on that motion, the Court denies this

11  request as moot.

12          **c.**      **RFP No. 3.**

13        Ms. Ujhelyi asks the Court to compel Secretary Vilsack to produce "all documents

14  reflecting the USDA, FSIS Alameda District Office management's communication with [Dr.

15  Aquino and Mr. Crowe"], including copies of any FSIS Forms 4735 submitted by them to the

16  USDA, FSIS Alameda District Office.  This should include copies of disciplinary actions

17  against them after they reported in February 2003 that they were attacked by" Premiere's

18  owners.  (Second Set of RFP, RFP No. 3.)  Ms. Ujhelyi contends that she needs these

19  documents to show that Dr. Aquino and Mr. Crowe did not file workplace violence reports and

20  were not disciplined for their failure to submit a Form 4735.  Ms. Ujhelyi claims that this will

21  show that the USDA did not follow its own guidelines and regulations, which would be

22  evidence of pretext.

23        For the reasons set forth in its ruling on the motion for summary judgment, even if this

24  evidence existed, it would not be material.  Accordingly, in light of that ruling, the Court denies

25  this request as moot.

26  **B.**      **The Court Denies Ms. Ujhelyi's Rule 56(d) Motion.**

27

28

**United States District Court**
For the Northern District of California

On July 28, 2014, after the Court vacated the hearing on the motion for summary judgment, Ms. Ujhelyi filed a motion pursuant to Federal Rule of Civil Procedure 56(d), which provides, in pertinent part, that:

> if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Although Ms. Ujhelyi is proceeding *pro se*, she is expected to comply with the Federal Rules of Civil Procedure, the Local Rules, and this Court's standing orders. *See, e.g., Ghazali v. Moran*, 46 F.3d, 52, 54 (9th Cir. 1995) (noting that *pro se* litgants are bound by the rules of procedure), *cert denied,* 516 U.S. 838 (1995); Civil L.R. 3-9(a). A party seeking relief under Rule 56(d) must bring the motion before the summary judgment hearing. Failure to comply with that requirement is a valid basis to deny relief. *See, e.g., United States v. Kitsap Physician Service*, 314 F.3d 995, 1000 (9th Cir. 2002). In addition, if the discovery the party seeks would be fruitless or if the party fails to conduct discovery diligently, a court also may deny a Rule 56(d) motion. *See Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) ("summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim."); *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("A movant cannot complain if it fails diligently to pursue discovery before summary judgment.").

Ms. Ujhelyi submitted her motion for discovery *after* the Court deemed the motion for summary judgment submitted. That alone would be a valid basis to deny her request. In addition, for the reasons set forth in Section A, the Court finds that much of the discovery that Ms. Ujhelyi seeks would be fruitless, because many of those requests are not material to resolution of the motion for summary judgment. To the extent she seeks a continuance to obtain information from USDA FSIS regarding the reasons it terminated her, the record shows that USDA FSIS did provide her with an explanation as to why it terminated her. Ms. Ujhelyi

11

does not explain what she expects to discover from the more detailed information or how that information might alter the outcome of the motion for summary judgment. She also has not shown that she acted diligently in attempting to obtain this information from Secretary Vilsack before the deadline for fact discovery had closed.

Ms. Ujhelyi also asks the Court to defer ruling on the motion for summary judgment so that she may depose Amin. Ms. Ujhelyi alleged that Amin delivered the notice of termination to her. Thus, she has known of his involvement in this matter since the inception of this litigation. However, Ms. Ujhelyi does not suggest that she made any efforts to depose him before fact discovery closed. Accordingly, Ms. Ujhelyi has not demonstrated that she was diligent in pursuing this discovery.

For each of these reasons, the Court DENIES Ms. Ujhelyi's Rule 56(d) motion.

**C.      The Court Grants, in Part, and Denies, in Part, Ms. Ujhelyi's Motion for Leave to File a Request for Judicial Notice.**

On August 8, 2014, Ms. Ujhelyi filed a motion for leave to file a request for judicial notice.[4] In her proposed request for judicial notice, she asks the Court to take judicial notice of: Secretary Vilsack's initial disclosures and responses to various discovery requests (Exhibits 1-6); documents from the administrative proceedings that preceded this lawsuit (Exhibits 7-41); various documents issued by the EEOC (Exhibits 42-43); copies of various opinions issued by the United States Courts of Appeals for the Seventh and Ninth Circuits (Exhibits 44-47); and copies of documents that are already on file in this case (Exhibits 48-50). The Court denies, as moot, the motion for leave to file a request for judicial notice of Exhibits 48-50, because they already are on file in this case as exhibits to or declarations in support of Secretary Vilsack's motion for summary judgment.

With respect to Exhibits 1-43, to the extent these documents comprise court filings or other public documents, the Court will take judicial notice of the fact that they were filed.

---

[4]      Secretary Vilsack asked the Court to strike this motion for leave to file as an unauthorized response to the substance of the motion for summary judgment. For the reasons set forth in the Court's ruling on the motion for leave to file the request for judicial notice, the Court denies the request to strike. The Court does not require a substantive response from Secretary Vilsack to the proposed request for judicial notice.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    However, the Court cannot take judicial notice of disputed facts contained in those documents.

2    In addition, the Court is not required to scour these documents to find support for Ms. Ujhelyi's

3    opposition to Secretary Vilsack's motion for summary judgment. *See Keenan v. Allan*, 91 F.3d

4    1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.

5    1995) (stating that it is not a district court's task to "scour the record in search of a genuine

6    issue of triable fact").

7        Ms. Ujhelyi includes arguments about why Exhibits 1-43 are relevant to the motion for

8    summary judgment.  She also includes argument about the case law included as Exhibits 44-47.

9    To the extent Ms. Ujhelyi is seeking to file a sur-reply to Secretary Vilsack's motion for

10   summary judgment, the Court denies that request, and it has not considered any argument set

11   forth in the proposed request for judicial notice.

12       Finally, the Court construes Ms. Ujhelyi's request for judicial notice of the cases

13   included as Exhibits 44-47, as a request for leave file a notice of supplemental authority.  The

14   parties cited *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000) in their briefs, and Secretary

15   Vilsack cited *Dawson v. Entek Int'l*, 630 F.3d 928 (9th Cir. 2011) in his briefs.  Accordingly,

16   the Court denies, as moot, Ms. Ujhelyi's request for leave to bring Exhibits 44 and 47 to the

17   Court's attention.  Although *Hawn v. Executive Jet Management*, 615 F.3d 1151 (9th Cir. 2010)

18   and *Radue v. Kimberly-Clark*, 219 F.3d 612 (7th Cir. 2000) would not qualify as supplemental

19   authority under Northern District Civil Local Rule 7-3(d)(2), the Court shall consider those

20   cases when it resolves Secretary Vilsack's motion for summary judgment.

21       Accordingly, the Court GRANTS, IN PART, AND DENIES, IN PART, Ms. Ujhelyi's

22   request for judicial notice.

23   **D.    The Court Denies Ms. Ujhelyi's Motion Leave to File a Motion for Sanctions.**

24       On August 12, 2014, Ms. Ujhelyi filed a motion for leave to file a motion for sanctions,

25   In her proposed motion for sanctions, she contends that Secretary Vilsack submitted false

26   evidence to the Court to suggest that she did not submit a request for reconsideration of her

27

28

1    debt.  (Docket No. 147-2, Proposed Motion for Sanctions at 5:10-11.)[5]  The Court has reviewed

2    Ms. Ujhelyi's proposed motion and the evidence that she contends is fraudulent, but it finds she

3    fails to make a sufficient showing that her motion for sanctions is warranted.

4           Accordingly, the Court DENIES the motion for leave to file a motion for sanctions.

5    **E.     The Court Grants Secretary Vilsack's Motion for Summary Judgment.**

6           **1.     Legal Standards Applicable to Motion for Summary Judgment.**

7           Summary judgment is appropriate when the record demonstrates "that there is no

8    genuine issue as to any material fact and that the moving party is entitled to judgment as a

9    matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence for a

10   reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477

11   U.S. 242, 248-49 (1986).  "[A]t the summary judgment stage the judge's function is not . . . to

12   weigh the evidence and determine the truth of the matter but to determine whether there is a

13   genuine issue for trial." *Id.* at 249.  A fact is "material" if it may affect the outcome of the case.

14   *Id.* at 248.  The party moving for summary judgment bears the initial responsibility of

15   identifying those portions of the record which demonstrate the absence of a genuine issue of a

16   material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

17          Once the moving party meets this initial burden, the non-moving party "may not rest

18   upon the mere allegations or denials of the adverse party's pleading, but the adverse party's

19   response, by affidavits or as otherwise provided in this rule, must set forth specific facts

20   showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  In the absence of such

21   facts, "the moving party is entitled to a judgment as a matter of law." *Celotex,* 477 U.S. at 323;

22   *see also Keenan*, 91 F.3d at 1279.

23          **2.     Legal Standards Applicable to Title VII Retaliation Claims.**

24          Under Title VII, it is an unlawful for an employer to retaliate against an employee

25   "because [s]he has opposed any practice made an unlawful employment practice by this

26   _____

27        [5]      Secretary Vilsack asked the Court to strike this motion for leave to file as an
     unauthorized response to the substance of the motion for summary judgment.  Because the
28   Court finds that the proposed motion has no merit, it denies that request, and it has not
     considered the arguments raised in the motion for sanctions in its analysis of the motion for
     summary judgment.

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner

2   in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

3   A retaliation claim may be based on allegations that a plaintiff was terminated because a family

4   member engaged in protected activities. *See Thompson v. North American Stainless, LP*, 562

5   U.S. 170, 131 S. Ct. 863, 867-68, 870 (2011).

6       Ms. Ujhelyi has not proffered "direct evidence" of retaliation, *i.e.*, "evidence which, if

7   believed, proves the fact" of retaliatory motive "without inference or presumption." *Vasquez v.*

8   *County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004). Accordingly, Ms. Ujhelyi's

9   retaliation claims are governed by the burden-shifting framework set forth in *McDonnell*

10  *Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Dawson*, 630 F.3d at 937. First, Ms.

11  Ujhelyi must establish a *prima facie* case of retaliation. *Id.* at 936. If Ms Ujhelyi is able to

12  establish a *prima facie* case of retaliation, the burden shifts to Secretary Vilsack to "offer

13  evidence that the challenged action was taken for legitimate, [non-retaliatory] reasons." *Id.* If

14  the Secretary Vilsack meets his burden, "the *McDonnell Douglas* framework drops out of the

15  picture entirely, and [Ms. Ujhelyi] bears the full burden of persuading the factfinder that the

16  employer intentionally discriminated against [her]." *Coghlan v. American Seafoods Co.*, 413

17  F.3d 1090, 1094 (9th Cir. 2005). That is, she bears the burden of showing that Secretary

18  Vilsack's proffered reasons for the adverse employment action were a pretext for retaliation.

19  *Dawson*, 630 F.3d at 936-37; *Vasquez,* 349 F.3d at 640.

20       **3.      The Termination Claim.**

21       Ms. Ujhelyi contends that USDA FSIS terminated her because of Dr. Muller's EEO

22  Activity. In order to make a *prima facie* case of retaliation on this theory of liability, Ms.

23  Ujhelyi must show that (1) that Dr. Muller engaged in a protected activity; (2) that she was

24  subsequently subjected to an adverse employment action; and (3) that a causal link exists

25  between the two. It is undisputed that Dr. Muller engaged in protected activity and that USDA

26

27

28

15

FSIS terminated Ms. Ujhelyi.[6]  Therefore, she has satisfied the first two elements of her *prima facie* case.  Secretary Vilsack argues he is entitled to summary judgment, because Ms. Ujhelyi cannot establish the requisite causal connection between Dr. Muller's EEO Activity and her termination.

"The requisite degree of proof necessary to establish a *prima facie* case for Title VII and ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Wallis v. J.R. Simplot, Co.*, 26 F.3d 885, 889 (9th Cir. 1994).  In order to establish causation, Ms. Ujhelyi must show that her husband's protected activity was one of the reasons she was terminated and that "but for such activity," she would not have been terminated.  *Villairimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002) (internal quotations omitted).  "Essential to a causal link is evidence that the employer was aware" of the allegedly protected activity.  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

In order to establish causation, Ms. Ujhelyi relies, in part, on the timing of the events in question.  "[P]roximity in time between the protected action and the allegedly retaliatory employment decision," may support an inference of causation.  *Ray*, 217 F.3d at 1244 (internal quotations and citations omitted); *see also Dawson*, 630 F.3d at 936 ("causal link can be inferred from ... employer's knowledge and ... proximity in time").  Dr. Muller testified that he discussed his involvement with the hate crime incident with Dr. Prasad in July 2002, although, as noted, Dr. Prasad denied that he knew about this incident.  USDA FSIS did not terminate Ms. Ujhelyi until May 2003.  Courts should not apply *per se* rules to determine that a given time period supports or negates causation.  *See Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003).  However, the "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality ... uniformly hold that the temporal proximity must be 'very close.'"  *Clark Co. Sch.*

---

[6]  The Court previously ruled that Ms. Ujhelyi failed to exhaust administrative remedies as to any claim that USDA FSIS altered her duties when she began working for that agency.  Therefore, the Court has not considered Ms. Ujhelyi's arguments that the alteration of her duties also qualifies as an adverse employment action.

United States District Court
For the Northern District of California

*Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing cases).  Indeed, in the *Breeden* case, the Supreme Court stated that "action taken . . . 20 months later suggests, by itself, no causality at all."  *Id.* at 274.  In this case, the nine month gap between the alleged conversation between Dr. Prasad and Dr. Muller, standing alone, would be too long to establish the requisite causal relationship.  *See Manatt*, 339 F.3d at 802.

It is undisputed that Dr. Muller also engaged in EEO Activity in March and May of 2003.  Although the timing of this activity might support an inference of causation, Ms. Ujhelyi's supervisors and the relevant decision makers denied that they were aware of this activity.  (*See, e.g.,* Amin Decl., ¶¶ 7, 10; Sewell Decl., Ex. K (Malak Response to Interrogatories Nos. 6, 7); Sewell Decl., Ex. K (Prasad Response to Interrogatories, Nos. 6, 7.)  Ms. Ujhelyi has not submitted any evidence to rebut these denials.  Indeed, Ms. Ujhelyi was not aware of these instances of Dr. Muller's EEO Activity until after she filed this case.  (Muller Depo. at 120:20-122:5.)

Ms. Ujhelyi contends that she and Dr. Muller suspect that the USDA included reports of Dr. Muller's EEO Activity in Ms. Ujhelyi's personnel file and that individuals within the agency discussed their activities.  (*See, e.g.,* Ujhelyi Depo. at 200:7-15, 201:13-202:7; Muller Depo. at 115:22-123:3.)  However, "a plaintiff's belief that a defendant acted from unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive."  *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028 (9th Cir. 2001).

Ms. Ujhelyi also argues that Dr. Prasad, who allegedly knew about the hate crime incident, was directly responsible for the decision to terminate her.  (*See* Compl. ¶¶ 50, 67.)  According to the record, although Dr. Prasad submitted the recommendation to terminate Ms. Ujhelyi, he was not the ultimate decision maker.  In addition, Dr. Prasad did not refer to Dr. Muller's EEO Activity in the letter recommending that USDA FSIS terminate Ms. Ujhelyi.  (*See, e.g.,* Docket No. 111, Declaration of Luz Cantres, ¶¶ 1, 4-5, Ex. A; Amin Decl., ¶¶ 6, 8-9, Ex B at USA 790-91, Exs. C-D.)  Ms. Ujhelyi has not proffered any evidence to dispute those

United States District Court

For the Northern District of California

1   facts, and she has not submitted evidence to show that anyone advised the relevant decision

2   makers about Dr. Muller's EEO Activity.

3           Ms. Ujhelyi also argues that Dr. Malak failed to follow USDA policies regarding sick

4   leave, processing of workplace violence reports, and processing of worker's compensation

5   claims and time cards.  However, there is no evidence in the record that Dr. Malak was aware of

6   Dr. Muller's EEO Activity when took those actions.[7]

7           Finally, Ms. Ujhelyi argues that neither Dr. Aquino nor Mr. Crowe filed a Form 4735

8   after they experienced instances of harassment at Premiere.  According to Ms. Ujhelyi, they

9   were not disciplined because of this failure.  In essence, Ms. Ujhelyi argues that Dr. Aquino and

10  Mr. Crowe were similarly situated to her but treated more favorably and that this raises dispute

11  of fact on the issue of causation.  "[W]hether two employees are similarly situated is ordinarily

12  a question of fact."  *Beck v. United Food & Commercial Workers union Local 99*, 506 F.3d 874,

13  885 n.5 (9th Cir. 2007).  A plaintiff must show that she is "similarly situated to those employees

14  in all material respects, and materiality is a "fact-intensive inquiry, and what facts are material

15  will vary depending on the case."  *Hawn*, 615 F.3d at 1157.  Generally, "individuals are

16  similarly situated when they have similar jobs and display similar conduct."  *Vasquez*, 349 F.3d

17  at 641.  An employee in a supervisory role is generally not similarly situated to a non-

18  supervisory employee.  *See id*.  The same is true when probationary and non-probationary

19  employees are involved.  *See, e.g., Steik v. Garcia*, 2003 WL 22992223, at *8 (N.D. Cal. Dec. 9,

20  2003).

21          Dr. Aquino was Ms. Ujhelyi's supervisor, and thus differs from her in that respect.  Mr.

22  Crowe is a USDA compliance inspector and, thus, might be Ms. Ujhelyi's peer, but she does

23  not indicate whether Mr. Crowe also was a probationary employee.  In addition, the fact that

24  Ms. Ujelhyi initially failed to file a Form 4735 was not the only reason cited for her termination,

25  and there is no evidence in the record that either Dr. Aquino or Mr. Crowe engaged in similar

26  conduct.  Taking the facts, and reasonable inferences therefrom, in the light most favorable to

27

28          [7]      In addition, Secretary Vilsack submitted evidence that Ms. Ujelhyi's request
for sick leave was granted and processed correctly.  (*See* Docket No. 108, Declaration of
Yvonne Stolts, ¶¶ 1, 3, Ex. A.)

Ms. Ujhelyi, even if USDA FSIS treated Dr. Aquino and Mr. Crowe differently, in that they were not required to filed a Form 4735, that fact is not material, because there is insufficient evidence to suggest that they are similarly situated to Ms. Ujhelyi.

The Court concludes that Ms. Ujhelyi has not come forth with sufficient evidence to meet her burden to show there are disputed facts on the issue of causation and, thus, has failed to show there are genuine issues of fact in dispute on her *prima facie* case of retaliation. However, assuming *arguendo* that Ms. Ujhelyi has put forth the minimal proof necessary to establish disputed issue of fact in her *prima facie* case, the Court would still grant Secretary Vilsack's motion for summary judgment on the termination claim.

According to the record, USDA FSIS terminated Ms. Ujhelyi because of her "failure to follow agency guidelines, failure to follow instructions, and [her] inability to unilaterally make decisions," as set forth more specifically in Dr. Prasad's letter recommending that she be terminated.  (Amin Decl., Ex. B at USA 790-91.)  Ms. Ujhelyi does not argue that these are not legitimate reasons to terminate an employee.  Rather, she maintains that these reasons are, in fact, a pretext for retaliation.  Thus, at this point, the *McDonnell Douglas* framework drops out of the Court's analysis, and Ms. Ujhelyi bears the full burden of showing that these reasons are a pretext for retaliation.  *See, e.g., Hawn*, 615 F.3d at 1158 (noting that "plaintiff's burden is much less at the *prima facie* stage than at the pretext stage"); *Vasquez*, 349 F.3d at 640.  Ms. Ujhelyi may "show pretext directly, by showing that discrimination more likely motivated" USDA FSIS, or indirectly, by showing that USDA FSIS's explanation for terminating her is "unworthy of credence." *Vasquez*, 349 F.3d at 641.  In addition, circumstantial evidence of pretext must be specific and substantial.  *See, e.g., Hawn*, 615 F.3d at 1158; *Wallis*, 26 F.3d at 890.

For example, in *Ray*, the plaintiff alleged that, after he complained about gender discrimination in the work place, his employer retaliated against him by removing flexible start times, instituting lock downs in the workplace, and reducing his pay.  *Ray*, 217 F.3d at 1237-39.  Although his employer offered what would otherwise qualify as legitimate reasons for taking these actions, the court concluded that the plaintiff had presented sufficient evidence of pretext

to overcome the defendant's motion for summary judgment.  Specifically, the plaintiff presented evidence that the defendant publicly announced that it had changed the start times because of the plaintiff's complaints.  The plaintiff also submitted evidence that even after this change other employees were permitted to start work early.  *Id.* at 1244.  The court also concluded the plaintiff had presented sufficient evidence of pretext to overcome summary judgment by presenting evidence that, although the defendant instituted pay cuts across the board, the plaintiff's pay cut was the largest.  *Id.*

In this case, there is a genuine dispute about whether Ms. Ujhelyi did accept an apology from Ms. Lawson.  However, that was only one of the reasons Dr. Prasad recommended that USDA FSIS terminate her, and, to overcome Secretary Vilsack's motion, Ms. Ujhelyi must present more than a "mere ... scintilla of evidence" that USDA FSIS's reasons for terminating her are a pretext for retaliation.  *Anderson*, 477 U.S. at 252.

The Court has considered all of the evidence set forth above, and the reasonable inferences to be drawn therefrom, in the light most favorable to Ms. Ujhelyi.  The Court concludes that no reasonable juror could find that USDA FSIS terminated Ms. Ujhelyi to retaliate against her because of Dr. Muller's EEO Activity.

Accordingly, the Court GRANTS, IN PART, Secretary Vilsack's motion for summary judgment.

### 4.      Reconsideration of the Debt.

Ms. Ujhelyi's second claim for relief is premised on the theory that Secretary Vilsack either refused to reconsider or has failed to process a request for reconsideration of the debt for moving expenses.  Secretary Vilsack argues that, as a matter of law, the refusal to process the request cannot qualify as an adverse employment action.  The Ninth Circuit defines the term "adverse employment action" broadly as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."  *Ray*, 217 F.3d at 1240, 1242-43.  The "plaintiff must show that a reasonable employee would have found the challenged action materially adverse."  *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("*Burlington Northern*").  The materiality

1  requirement "separate[s] significant from trivial harms," and ensures that "petty slights or minor

2  annoyances that often take place at work and that all employees experience" are not the basis

3  for Title VII retaliation claims. *Id.* "[T]he significance of any given act of retaliation will often

4  depend upon the particular circumstances. Context matters." *Id.*

5       The record shows that the USDA advised Ms. Ujhelyi that failure to pay the debt could

6  result in referral to the Treasury Offset Program or an administrative garnishment proceeding.

7  (Ujhelyi Depo. Ex. 21.) Construing all inferences in Ms. Ujhelyi's favor, the practical effect of

8  USDA FSIS' alleged refusal to reconsider, or its failure process her request to reconsider, the

9  debt, would be to saddle an employee with a bill that may or may not be legitimate,

10  accompanied by threats to refer the matter to the ominous-sounding "Treasury Offset Program."

11  In addition, these events took place after Ms. Ujhelyi lost her income as a result of the

12  termination.

13       Secretary Vilsack also argues that because Ms. Ujhelyi filed this case, the failure to

14  reconsider or to process did not "deter" *her* from engaging in protected activity. However, the

15  issue is not whether Ms. Ujhelyi subjectively found the alleged adverse action to be materially

16  adverse. The issue is whether a "reasonable employee would have found the challenged action

17  materially adverse." *Burlington Northern*, 548 U.S. at 68. A reasonable employee might think

18  twice about pursuing an administrative complaint concerning the termination knowing that the

19  agency would respond with such practices. In light of the lack of clear authority to the contrary,

20  and taking the facts in the light most favorable to Ms. Ujhelyi, the Court concludes that the

21  refusal or failure to reconsider her debt qualifies as an adverse employment action.

22       These actions also occurred shortly after she was terminated. Accordingly, taking the

23  facts in the light most favorable to Ms. Ujhelyi, the Court concludes that she has established a

24  prima facie case of retaliation.

25       Secretary Vilsack argues that there were legitimate reasons for not reconsidering Ms.

26  Ujelhyi's debt. He submits evidence to show that NFC did not have the authority to waive the

27  debt and that it followed proper procedures by submitting Ms. Ujhelyi's request to USDA FSIS.

28  (*See* Ujhelyi Depo., Ex. 23; Sewell Decl., Ex. Q (Stephen Loeffelholz Response to

1    Interrogatories No. 8, 10, 12.)  Secretary Vilsack admits that the record is "inconclusive" as to

2    what happened to the request after the NFC forwarded the request to USDA FSIS.  (*See* Docket

3    No. 116, Declaration of Allison Opicka ¶¶ 3-4.)  Secretary Vilsack also argues that, based on

4    the terms of her service agreement, although it had discretion to do so, USDA FSIS had no

5    reason to waive the debt, because Ms. Ujelhyi failed to complete the terms of her service

6    agreement.  Thus, once again, the issue for the Court is whether Ms. Ujelhyi has put forth

7    sufficient evidence of pretext.  The Court concludes she has not.

8        Although there is some evidence that Ms. Ujelhyi referenced her EEO complaint in

9    correspondence relating to the request for reconsideration, and there is evidence that individuals

10   at the NFC may have been aware that she filed a complaint, Ms. Ujelhyi fails to put forth any

11   evidence that the individuals at USDA FSIS who would have made the decision about whether

12   or not to waive the debt knew that she had filed a complaint relating to her termination.  As with

13   her termination claim, Ms. Ujhelyi's evidence of pretext boils down to nothing more than her

14   subjective belief that someone within USDA FSIS must have learned about her complaint and

15   retaliated against her because of it.  This is not sufficient to overcome Secretary Vilsack's

16   motion, and he is entitled to summary judgment on this claim as well.

17                             **CONCLUSION**

18        For the foregoing reasons, the Court GRANTS Secretary Vilsack's motion for summary

19   judgment.  The Court shall issue a separate judgment, and the Clerk shall close this file.

20        **IT IS SO ORDERED.**

21   Dated: October 6, 2014                                                           _____

22                                          JEFFREY S. WHITE
                                         UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28